**TIME WARNER CABLE OF NEW YORK CITY, a Division of Time Warner Entertainment Company, L.P., Plaintiff,**

v.

**TACO RAPIDO RESTAURANT, et al., Defendants.**

**No. 96–CV–2178 (JBW).**

United States District Court, E.D. New York.

July 8, 1997.

---

Daniel J. Lefkowitz, Daniel J. Lefkowitz, P.C., Jericho, NY, for Plaintiff.

Frederick Schwartz, New York City, for Defendants.

## JUDGMENT

WEINSTEIN, District Judge.

An order of Honorable Jack B. Weinstein, United States District Judge, having been filed on July 2, 1997, approving on the merits the May 13, 1997 Report and Recommendation of Magistrate Judge Robert M. Levy entering judgment in favor of plaintiff and against defendant Rincon Sabroso in the sum of $8,750.00 for statutory damages and $1,802.75 in attorney's fees and costs, it is

ORDERED and ADJUDGED that the May 13, 1997 Report and Recommendation of Magistrate Judge Robert M. Levy is adopted; and, that judgment is hereby entered in favor of plaintiff and against the defendant Rincon Sabroso in the sum of

$8,750.00 for statutory damages and $1,802.75 in attorney's fees and costs.

## REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge.

By order dated October 2, 1996, the Honorable Jack B. Weinstein, United States District Judge, entered a default judgment against defendant Rincon Sabroso Comida Tipica Colomiana y Mariscos Restaurant ("defendant" or "Rincon Sabroso") and referred this matter to me to report and recommend the amount of damages to be awarded plaintiff, not to exceed $110,000, plus reasonable attorney's fees and costs. For the reasons stated below, I respectfully recommend that judgment be entered in favor of plaintiff and against defendant Rincon Sabroso in the amount of $9,750.00, and that plaintiff be awarded reasonable attorney's fees and costs in the amount of $1,802.75.

## BACKGROUND AND FACTS

Plaintiff Time Warner Cable of New York City ("plaintiff" or "TWCNYC") brought this action against defendant Rincon Sabroso and others on May 2, 1996, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1991). The complaint alleges that Rincon Sabroso received TWCNYC's private cable television programming without authorization and seeks statutory damages, plus reasonable attorney's fees and costs. After Rincon Sabroso failed to appear in this action, Judge Weinstein entered a default judgment against it and referred the issue of damages to me. By order dated October 16, 1996, I directed the parties to file written inquest submissions. Plaintiff filed its written submission in a timely manner, but defendant again failed to respond.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See *Greyhound Exhibitgroup, Inc. v. E.L.U .L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Au Bon Pain Corp. v. Artect. Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *Montcalm*

*Publ'g Corp. v. Ryan*, 807 F.Supp. 975, 977 (S.D.N.Y.1992). Plaintiff's allegations are as follows:

Pursuant to certain franchises, plaintiff, a division of Time Warner Entertainment Company, L.P., operates and maintains a cable television system within parts of Queens County that offers broadcast and cable television programming to its subscribers. TWCNYC's programming includes "basic cable" and "premium" channels. "Basic cable" is a package of channels that a subscriber receives at a flat monthly rate. "Premium" channels are added channels outside of basic cable service, including Home Box Office, Showtime and the Movie Channel, for which a subscriber pays an additional monthly fee. TWCNYC also offers pay-per-view programming, a service that allows subscribers to view individual movies, sporting events or other entertainment for a per-event fee.

The signals TWCNYC transmits are private communications that are solely for the benefit of TWCNYC's paying customers. TWCNYC's signals for premium channel and pay-per-view options are electronically coded or "scrambled" so that they must be decoded by electronic decoding equipment in order for one to view the signals clearly on a television receiver. As part of each customer's subscription, TWCNYC provides a converter-decoder box that allows the subscriber to view the type and amount of programming that the subscriber has purchased and is authorized to receive.

On August 19, 1995, TWCNYC broadcast the Mike Tyson–Peter McNeeley Pay–Per–View Boxing Event ("the Event" or "the Boxing Event"). On that evening, TWCNYC retained a private investigation firm, ACI Investigations ("ACI"), to visit various commercial establishments in the franchise area to determine whether any such establishments were intercepting and publicly displaying TWCNYC's telecommunication signals of the Event without authorization from, or payment to, TWCNYC.

Defendant Rincon Sabroso is a restaurant located at 86–28 Roosevelt Avenue, Jackson Heights, New York—an area within TWCNYC's franchise. According to

TWCNYC's records, Rincon Sabroso subscribed to TWCNYC for basic cable on July 21, 1995. However, from the commencement of its subscription, Rincon Sabroso failed to pay the approximately $75 monthly fee. TWCNYC thus disconnected service to Rincon Sabroso for non-payment on October 25, 1995 and has not provided authorized cable television service to that location since that time. TWCNYC records also show that Rincon Sabroso did not request or provide payment for pay-per-view services on August 19, 1995; nor did it request or receive authorization to display the Event publicly.

On August 19, 1995 at approximately 10:20 p.m., ACI investigators Ron Betterly and Edward Kling entered Rincon Sabroso and observed approximately seventy-five (75) people watching the Boxing Event on a television set above the bar. (Affidavit of Ron Betterly, sworn to November 21, 1996, at ¶ 4, 5). The investigators also saw approximately twenty (20) people standing outside the establishment, viewing the Event through a window, and they observed that Rincon Sabroso did not charge a cover fee on that evening. (*Id.* at ¶ 4, 6). The investigators did not see any advertising of the Event. (*Id.* at ¶ 4).

Plaintiff seeks the maximum statutory damages of $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(11) or, in the alternative, $10,000 pursuant to 47 U.S.C. § 553(c)(3)(A), for Rincon Sabroso's one documented violation. In addition, plaintiff seeks an additional damage award of up to $100,000 under section 605(e)(3)(C)(ii), or up to an additional $50,000 pursuant to section 553(c)(3)(B), plus reasonable attorney's fees and costs.

### DISCUSSION

Plaintiff requests an award under either 47 U.S.C. § 605 or 47 U.S.C. § 553. While both statutes allow the aggrieved party to elect to recover either actual damages and lost profits, or statutory damages (*see* 47 U.S.C. §§ 605(e)(3)(C)(i)(I) and 553(c)(3)(A)), section 605 contains a more severe statutory damages provision. Specifically, 47 U.S.C. § 553(c)(3)(A)(ii) allows an aggrieved party to recover statutory damages for "all violations involved in the action, in a sum not less

than $250 or more than $10,000 as the court considers just," while 47 U.S.C. § 605(e)(3)(C)(i)(II) allows for statutory damages for "each violation of subsection (a) of this section ... in a sum of not less than $1,000 or more than $10,000, as the court considers just...."

■ Jurisprudence regarding the application of these two statutes has been in flux. However, the Second Circuit has held that where a defendant is found to have violated *both* statutes, the court should award damages pursuant to 47 U.S.C. § 605. *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir.1993). *See also Time Warner Cable of New York City v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 329 (E.D.N.Y. 1996). Accordingly, analysis of the two statutes and the relevant precedent is warranted.

47 U.S.C. § 553, which applies specifically to the "unauthorized reception of cable services," provides:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

On its face, section 553 clearly applies to this case. Alternatively, 47 U.S.C. § 605(a) applies to "communication by wire or radio" and provides:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

There is a substantial body of case law applying section 605 to the unauthorized receipt of cable television programming. *See International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir.), *cert. denied sub nom., Noel v. International Cablevision, Inc.,* —— U.S. ——, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996); *Cablevision Sys. Corp. v. Muneyyirci,* 876 F.Supp. 415, 425 (E.D.N.Y.1994); *Cablevision Sys. Corp. v. 45 Midland Enters., Inc.* 858 F.Supp. 42, 44 (S.D.N.Y.1994); *Cablevision Sys. Corp. v. Maxie's North Shore*

*Deli Corp.*, No. CV 88 2834, 1991 WL 58350, at *1 (E.D.N.Y. Mar.20, 1991); *Primetime 24 Joint Venture v. Telecable Nacional,* No. CIV. A. 90–1941, 1990 WL 598572, at *2 (D.N.J. Oct.10, 1990); *Cablevision Sys. Corp. v. De Palma,* No. CV–87–3528, 1989 WL 8165, at *5–6 (E.D.N.Y. Jan. 17, 1989); *Ciminelli v. Cablevision,* 583 F.Supp. 158, 161 (E.D.N.Y.1984). Section 605 thus applies to this case as well. Since defendant violated both section 553 and section 605, the court must assess damages pursuant to section 605. *See Sykes,* 997 F.2d at 1007.

As explained above, section 605 provides that an aggrieved party may recover "statutory damages for each violation of subsection (a) of this section ... in a sum of not less than $1,000 or more than $10,000, as the court considers just...." 47 U.S.C. § 605(e)(3)(C)(i)(II). Section 605 also allows for an increase in damages of not more than $100,000 for conduct that is committed willfully and for the purpose of obtaining commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

■ The amount of damages assessed pursuant to section 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); *see also Home Box Office v. Champs of New Haven, Inc.,* 837 F.Supp. 480, 484 (D.Conn.1993). As a yardstick for assessing profits, some courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of the transmission. *See Kingvision Pay–Per–View Corp. v. Prime Time Saloon, Inc.,* 95 CV 1422 (E.D.N.Y. September 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge); *45 Midland Enters., Inc.,* 858 F.Supp. at 45 (awarding $50 per patron); *Cablevision Sys., Inc. v. Doudlesox, Inc.,* No. 89 CV 0500 (E.D.N.Y. August 24, 1989) (awarding $30 per patron). Others have simply assessed a flat damage amount per violation. *See Home Box Office v. Gee–Co. Inc.,* 838 F.Supp. 436, 440 (E.D.Mo.1993) (awarding statutory damages of $1,000, plus an additional $1,000 for willfulness, to redress violation of section 605); *Home Box Office v. Carlim. Inc.,* 838

F.Supp. 432 (E.D.Mo.1993) (use of a "pirate chip" to unscramble satellite signal of a boxing match warranted statutory damages of $1,000 to redress non-willful violation of section 605): *American Cablevision of Queens v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y. 1993) (imposing statutory damages of $250 per converter box per month of unauthorized use where not for private financial gain).

■ Because there is evidence in the record concerning the number of patrons who were present in Rincon Sabroso on the occasion described in the complaint, the per-patron valuation is appropriate here. According to the affidavit of TWCNYC investigator Ron Betterly, there were approximately seventy-five (75) patrons in Rincon Sabroso during the broadcast of the Boxing Event. Betterly also stated that there were approximately twenty (20) people standing outside of the establishment watching the program through a window. In determining damages on a per-patron basis, I have not included the individuals standing outside, since it is unlikely that Rincon Sabroso received any direct income or profit from their presence. Accordingly, in light of pertinent case law, I respectfully recommend that plaintiff be awarded $50 per patron inside the establishment on the night at issue, for a total of $3,750 in statutory damages.

■ With respect to plaintiff's application for additional damages for conduct that is committed willfully and for the purpose of obtaining commercial advantage or private financial gain, plaintiff's request should be granted. In order for Rincon Sabroso to receive the closed-circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission. Therefore, Rincon Sabroso's conduct was willful. Moreover, defendant's display of the Event most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages. On the other hand, plaintiff does not allege that Rincon Sabroso advertised the display of the Event in order to entice customers into the establishment. Nor did Rincon Sabroso charge a cover fee or show the Event on multiple

**112**

televisions. Accordingly, this court recommends that an additional award of $5,000 in enhanced damages be assessed against Rincon Sabroso. *See Kingvision Pay–Per–View,* 95 CV 1422 (imposing additional award of $5,000 per television set).

■ Finally, as the prevailing party, plaintiff is entitled to an award of costs and reasonable attorney's fees in this action. 47 U.S.C. § 605(e)(3)(B)(iii); *Sykes,* 997 F.2d at 1009; *Time Warner Cable,* 920 F.Supp. at 329. In accordance with this statutory right, plaintiff has submitted detailed time records indicating that Daniel J. Lefkowitz, Esq. worked .33 hours at an hourly rate of $175.00, for a total of $57.75; William B. Jung, Esq. worked .4 hours at an hourly rate of $150.00, for a total of $60.00; Wayne R. Louis, Esq. worked .5 hours at an hourly rate of $75.00 and .41 hours at an hourly rate of $90.00, for a total of $74.40; Eden L. Rohrer, Esq. worked 2.56 hours at an hourly rate of $135.00, for a total of $345.60; and James T. Ausili, Esq. worked 11.3 hours at an hourly rate of $110.00, for a total of $1,243.00. (*See* Affidavit of James T. Ausili, Esq., sworn to November 25, 1996 ("Ausili Aff."), at ¶ 6 and Exhibit C). I have reviewed plaintiff's submissions and am satisfied that the hourly rates are reasonable and that the number of hours expended is also reasonable. *See Kingvision Pay–Per–View,* 95 CV 1422 (similar hourly rates applied); *45 Midland Enters.,* 858 F.Supp. at 45 (same). In addition, plaintiff spent $22.00 for service of process. (Ausili Aff. at ¶ 6). I therefore respectfully recommend that plaintiff be awarded $1,802.75 in attorney's fees and costs.[1]

### CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff be awarded $8,750 in statutory damages and $1,802.75 in attorneys' fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Weinstein and the undersigned, within ten (10) business days. Failure to file objections

within the specified time waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

May 13, 1997.

---

1. In recommending an award of attorney's fees and costs, the court has performed its own mathematical calculations and has not adopted the calculations of plaintiff's counsel.