**TIME WARNER CABLE OF NEW YORK CITY, a division of Time Warner Entertainment Company, L.P., Plaintiff,**

v.

**GOOGIES LUNCHEONETTE, INC. d/b/a Googies, 1590 2nd Avenue Corp. d/b/a Easy Street, V.M. Delgross Restaurant, Inc. d/b/a/ Maryann's, Dim Sum Cafe of New York, Inc. d/b/a Ranpai, New York Grill, Inc. d/b/a Sutton Grille, Velkonel Restaurant, Inc. d/b/a Cafe 31, Anchor Bar, Shangrila Grill, Inc. d/b/a Shangri–La Bar, and R Bar of Manhattan, Inc. d/b/a R Bar, Defendants.**

No. 96 CIV. 1575 JFK SEG.

United States District Court,
S.D. New York.

Dec. 21, 1999.

Daniel J. Lefkowitz, Jericho, NY, for plaintiff.

## *ORDER*

KEENAN, District Judge.

This case was referred to Magistrate Judge Sharon E. Grubin for a determination of damages, attorney's fees, and costs after this Court entered default judgements and permanent injunctions against defendants Dim Sum Cafe of New York, Inc., Shangrila Grill, Inc., and R Bar of Manhattan, Inc. The Court has received Judge Grubin's Report and Recommendation, dated November 8, 1999, recommending that judgment be entered against Dim Sum Cafe of New York, Inc. for $4,000, together with $635 in attorney's fees, against Shangrila Grill, Inc. for $15,000, together with $635 in attorney's fees and costs, and against R Bar of Manhattan, Inc. for $9,000, together with $635 in attorney's fees and costs. As indicated by Judge Grubin in her Report, pursuant to Fed.R.Civ.P. 72, the parties had ten days in which to file objections to the November 8 Report. The Court has received no objections to the November 8 Report. Upon a de novo review of Judge Grubin's Report and Recommendation, it is hereby ordered that Judge Grubin's November 8 Report and Recommendation is adopted as the opinion of this Court.

**SO ORDERED.**

## REPORT AND RECOMMENDATION TO THE HONORABLE JOHN F. KEENAN

GRUBIN, United States Magistrate Judge.

This case, with jurisdiction founded on the Cable Communications Policy Act of 1934 § 2, 47 U.S.C. § 553, and the Communications Act of 1934 § 705, 47 U.S.C. § 605, was referred to me for a determination of damages, attorney's fees and costs after entry by your Honor of default judgments and permanent injunctions against defendants Dim Sum Cafe of New York, Inc. (d/b/a Ranpai), Shangrila Grill, Inc.

(d/b/a Shangri–La Bar), and R Bar of Manhattan, Inc. (d/b/a R Bar), upon their failure to appear herein. All other defendants have now been dismissed. Plaintiff has submitted sworn testimony and documentary evidence on damages against the defaulting defendants. These defendants have not made any submissions or contacted the court at any time, despite notice and opportunity to do so.

■   A default judgment entered on well-pleaded allegations of a complaint establishes a defendant's liability. The allegations are to be accepted as true, except those relating to the amount of damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir.1997); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir.1995); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 658 (S.D.N.Y.1996); *Lawrence Fund, L.L.P. v. Helionetics, Inc.*, No. 95 Civ. 1005(RPP)(SEG), 1996 WL 352911, at *1 (S.D.N.Y. June 25, 1996). Set forth below are my findings of fact and conclusions of law.

## I.

Plaintiff Time Warner Cable of New York City ("Time Warner") operates pursuant to franchise a cable television system in Manhattan, where defendant Dim Sum Cafe of New York, Inc. operates Ranpai, defendant Shangrila Grill, Inc. operates Shangri–La Bar, and defendant R Bar of Manhattan, Inc. operates R Bar. (Complaint ¶¶ 4, 8, 12–14; Affidavit of Thomas Allen, sworn to August 15, 1997 ("Allen Aff.") ¶ 2.)

Plaintiff's operations have been described many times and need not be set forth herein. *See, e.g., Time Warner Cable of New York City v. Barnes*, 13 F.Supp.2d 543, 544–46 (S.D.N.Y.1998); *Time Warner Cable of New York City v. Domsky*, 96 Civ. 6851(DAB)(RLE), 1997 U.S. Dist. LEXIS 13505, at *2–*7 (S.D.N.Y. Sept. 2, 1997); *Time Warner Cable of New York City v. Cable Box Wholesalers, Inc.*, 920 F.Supp. 1048, 1049 (D.Ariz.1996); *Time Warner Cable of New York City v. Freedom Electronics, Inc.*, 897 F.Supp. 1454, 1455–56 (S.D.Fla.1995); *Time Warner Cable of New York City v. Rivera*, No. 94 CV 2339(JS), 1995 WL 362429, at *1 (E.D.N.Y. June 8, 1995). Briefly, plaintiff offers its cable television services to residential and commercial locations which subscribe to it. The programming consists of different tiers of service. For a regular monthly fee an individual receives "standard" service, and for an additional monthly charge an individual can subscribe to "premium" programming services such as Cinemax or Home Box Office. In addition, plaintiff offers "Pay–Per–View" programming, whereby a subscriber receives individual entertainment or sporting events for a specific fee for that event beyond the subscriber's regular monthly rate. (Allen Aff. ¶¶ 3–4.)

Plaintiff offered a boxing match between Mike Tyson and Peter McNeeley (the "match") as a "Pay–Per–View" event on August 19, 1995. (Complaint ¶¶ 21–22; Allen Aff. ¶ 14.) The charge to residential subscribers for this fight was $49.95. ("Allen Aff." ¶ 13.) Commercial establishments were charged various amounts based on occupancy rates; the cost for such events usually ranges from $500 to $1,500. (Allen Aff. ¶ 13.) Commercial establishments generally wish to exhibit such events to attract customers. (Complaint ¶ 23.)

To ensure that only subscribers obtain access to services, Time Warner scrambles its signal. Subscribers are provided with a converter, which electronically decodes or "de-scrambles" the signal for the specific programming to which that subscriber is entitled (Complaint ¶¶ 18, 20; Allen Aff. ¶¶ 8–11.) However, there are decoding devices that persons can unlawfully obtain and install to unscramble Time Warner's signal without authorization. (Allen Aff. ¶ 12.)

An investigator for Time Warner was in Ranpai on August 19, 1995 and saw the match on television monitors there. There were twenty patrons watching it. Ranpai, however, was a subscriber only for standard service from plaintiff. It had not paid for and was not authorized to receive the match. (*Id.* ¶ 16.) Another investigator saw the match being broadcast at the Shangri–La Bar, where it was viewed by sixty patrons. Although the Shangri–La Bar had had an account with plaintiff, it had been terminated early in 1995 for failure to pay and was not authorized to receive any service. (*Id.* ¶ 17.) An investigator also saw the match being shown in the R Bar and viewed by twenty patrons. R Bar had never subscribed to plaintiff's cable services. (*Id.* ¶ 18.)

Based on these facts, plaintiff has shown and the three defendants, by their default, have admitted that each defendant willfully tampered with plaintiff's cable television system.

## II.

Plaintiff seeks damages under 47 U.S.C. §§ 553(a)(1) and 605, New York Public Service Law § 225.6, and common law conversion and trespass.

█ It is well established that unlicensed reception and exhibition of a cable transmission violates section 553 of title 47, and as plaintiff has been aggrieved by each defendant's violation, it is entitled to relief under the statute.[1] *See, e.g., Time Warner Cable of New York City v. Taco Rapido Restaurant,* 988 F.Supp. 107, 110 (E.D.N.Y.1997); *Home Box Office v. Gee-*

*Co, Inc.,* 838 F.Supp. 436, 439 (E.D.Mo. 1993).

█ Plaintiff's rights under section 605 of the act are less clear.[2] Unauthorized interception and exhibition of a cable transmission violate § 605 if the cable transmission originated as a radio signal. *See, e.g., Top Rank, Inc. v. Allerton Lounge,* No. 96 Civ. 7864(SS)(RLE), 1998 U.S. Dist. LEXIS 2394, at *9–*11 (S.D.N.Y. March 3, 1998); *Cablevision Systems Corp. v. Glen Mini Market 11,* No. 95 Civ. 10436(DAB)(RLE), 1997 U.S. Dist. LEXIS 3533, at *8–*10 (S.D.N.Y. March 21, 1997); *Joe Hand Promotions v. Burg's Lounge,* 955 F.Supp. 42, 43 n. 2 (E.D.Pa.1997). If the intercepted signal does not involve a radio-originated communication, § 605 does not apply. *See International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 131 n. 5 (2d Cir.), *cert. denied,* 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996); *Time Warner Cable of New York City v. Pena,* No. 97 Civ. 3538(RO)(HBP), slip op. at 10 n.3 (S.D.N.Y. Feb. 26, 1998).

Although plaintiff has pleaded all other elements required for a claim under the statute, neither the complaint nor the evidence submitted in this inquest expressly states that the match was received from a radio signal. However, plaintiff does state that it "receives the signals to all of its premium and most of its Pay–Per–View programming channels by transmissions received via orbiting satellites." (Allen Aff. ¶ 6.) After the default by defendants, plaintiff is entitled to all reasonable inferences from the evidence offered. *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981); *In re Crazy Eddie*

---

1. Section 553(a)(1) provides:

   No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

2. Section 605(a) states in relevant part:

   No person not being authorized by the sender shall intercept any radio communi-

cation and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Securities Litig., 948 F.Supp. 1154, 1160 (E.D.N.Y.1996); Ciner Mfg. Co. v. S.M. Gold Fashion Mfg. Corp., No. 94 Civ. 3831(JFK), 1997 WL 193330, at *1 (S.D.N.Y. July 19, 1996). It is a reasonable inference that this Pay–Per–View event, like most, was received by satellite radio signal, especially as the match took place in Las Vegas. Moreover, there are at least three decisions in which damages under § 605 have already been awarded for unauthorized showings of this match, see Time Warner Cable of New York City v. Taco Rapido Restaurant, supra; Joe Hand Promotions v. Burg's Lounge, supra; Cablevision Systems New York City Corp. v. Titan's Ass'n, Ltd., No. 96 CV 4389, 1997 WL 269584 (E.D.N.Y. April 25, 1997), and your Honor entered injunctions under § 605 in the default judgments against these defendants as well as under § 553. I conclude that plaintiff is aggrieved by a violation of § 605 and entitled to relief thereunder.

■ Both § 553 and § 605 allow plaintiff to elect to recover either actual damages and lost profits, or statutory damages. 47 U.S.C. § 553(c)(3)(A); 47 U.S.C. § 605(e)(3)(C)(i)(I). Plaintiff has opted for statutory damages. Where a defendant is liable under both § 553 and § 605, a plaintiff is entitled to have damages awarded under 605 which provides for greater recovery. See International Cablevision, Inc. v. Sykes, 75 F.3d at 127; Time Warner Cable of New York City v. Papathansis, 97 Civ. 3537(JSM)(THK), slip op. at 7–8 (S.D.N.Y. Sept. 22, 1998); Time Warner Cable of New York City v. Barnes, 13 F.Supp.2d at 548; Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F.Supp. at 110; New Contenders, Inc. v. Diaz Seafood Corp., No. 96 Civ. 4701(AGS)(HP), 1997 WL 538827, at *1–*2 (S.D.N.Y. Sept. 2, 1997); Time Warner Cable of New York City v. Olmo, 977 F.Supp. 585, 589 (E.D.N.Y.1997).

Section 605(e)(3)(C)(i)(II) states that "the party aggrieved may recover an award of statutory damages for each viola-

tion of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." In addition, § 605(e)(3)(C)(ii) provides that "where the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a)." Section 605 does not, however, give guidelines for determining statutory damages, relying instead on the discretion of the court.

■ Courts in this circuit have adopted two approaches for cases of unauthorized receipt and exhibition of pay-per-view events by commercial establishments. Some have based their award on the number of patrons in the establishment who viewed the show. See, e.g., Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F.Supp. 107, 111 (E.D.N.Y.1997) ($50 per patron); Cablevision Systems Corp. v. Glen Mini Market 11, 1997 U.S. Dist. LEXIS 3533, at *11–*12 ($30 per patron); Cablevision Systems New York City Corp. v. Allerton Lounge, Inc., No. 95 Civ. 10430(LAK)(RLE), 1997 U.S. Dist. LEXIS 3553, at *12 (S.D.N.Y. March 21, 1997) ($30 per patron plus $10 per patron for the cover charge); Cablevision Systems New York City Corp. v. 281 East 204th Street Tavern Inc., No. 95 Civ. 10435(BSJ), slip op. at 1–2 (S.D.N.Y. Nov. 15, 1996) ($39.95 per patron); Cablevision Systems Corp. v. 45 Midland Enterprises, Inc., 858 F.Supp. 42, 45 (S.D.N.Y.1994) ($50 per patron); Cablevision Systems Inc. v. Doudlesox, Inc., CV 89–0500 (E.D.N.Y. Aug. 24, 1989) ($30 per patron); cf. Cablevision Systems New York City Corp. v. Cateras, No. 97 Civ. 7199(LAK)(HBP), slip op. at 14 (S.D.N.Y. May 1, 1998)($300 per patron); New Contenders, Inc. v. Diaz Seafood Corp., 1997 WL 538827, at *2(same). Others have awarded a flat sum for each violation. See, e.g., Top Rank, Inc. v. Allerton Lounge,

No. 96 Civ. 7864(SS), slip op. at 3 (S.D.N.Y. March 24, 1998)($5,000 and $10,000); *Main Events/Momitor Productions v. Allerton Billiards Corp.*, No. 96 Civ. 7862(JGK), 1997 WL 257481 (S.D.N.Y. May 15, 1997) (Docket # 38, slip op. at 2, $5,000 for § 553 and $5,000 for § 605; Docket # 39, slip op. at 2, $5,000 for § 553 and $5,000 for § 605); *Cablevision Systems New York City Corp. v. Titan's Ass'n, Ltd.*, slip op. at 8 ($10,000); *Top Rank, Inc. v. Fiesta Restaurant Systems, Inc.*, No. 96 Civ. 4585(JGK), 1996 WL 738325 (S.D.N.Y. Dec. 26, 1996) (Docket # 22, slip op. at 2, $5,000 for § 553 and $10,000 for § 605; Docket # 23, slip op. at 2, $5,000 for § 553 and $5,000 for § 605); *Home Box Office v. Champs of New Haven, Inc.*, 837 F.Supp. 480, 484 (D.Conn. 1993) ($10,000, including damages for copyright violation); *Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.*, No. CV 88–2834(ASC), 1991 WL 58350, at *1 (E.D.N.Y. March 20, 1991) ($5,000).

I have carefully reviewed the statute and the foregoing opinions. I have also looked to the criteria for awarding statutory damages under the Copyright Act, 17 U.S.C. § 504(c), whose structure is similar to that of § 605. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir.1986); *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, No. 96 Civ. 7973(HB), 1998 WL 603225, at *3 (S.D.N.Y. Sept. 11, 1998); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. at 659–60; *see also Time Warner Cable of New York City v. Dockins*, No. 96 Civ. 6852(RPP)(MHD), slip op. at 14–15 (S.D.N.Y. Sept. 4, 1998)(applying Copyright Act standards to damages against residential use of unauthorized descrambler).

I recommend that in a case like this one, where we have uncontradicted evidence of the number of patrons viewing the match in each establishment, we take the first approach and use a set sum to be multiplied by the number of patrons, plus any cover charge or other profit that can be attributed to the unauthorized showing. This is based on a theory of rough justice, that the patrons viewing the event without access to the unauthorized showing would have ordered it themselves. Plaintiff is thus fully compensated for any loss it suffered. In addition, by divesting the defendants of any profits, it assures that they reap no benefit from unlawful action.

Plaintiff did not provide evidence of exactly what it charged commercial establishments for authorization to exhibit the match. Given that it charged residential customers approximately $50 to view the match, and that commercial charges generally range from $500 to $1,500, I recommend that each defendant be required to pay $50 for each patron viewing the match. This yields a damage award under section 605(e)(3)(C)(i)(II) of $1,000 for Dim Sum Cafe of New York, Inc., $3,000 for Shangrila Grill, Inc., and $1,000 for R Bar of Manhattan, Inc. With respect to profits of the defendants, there is no evidence that any of them collected a cover charge or other special profit from the match. While presumably defendants' patrons consumed food and/or beverages, without any evidence of these amounts, no award can be made for those sales. To the extent the $50 sum per patron may reflect a greater amount than plaintiff would have legitimately obtained in that not every patron would have ordered the match individually, whatever extra it represents can be seen to encompass the defendants' profits on the sale of food and drink.

■ There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems. As stated by the court in *Time Warner Cable of New York City v. Taco Rapido Restaurant*, "[i]n order for [defendant] to receive the closed circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in

some way, so as to receive and view the scrambled transmission." 988 F.Supp. at 111. An additional award for willfulness will put violators "on notice that it costs less to obey the...laws than to violate them," *Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889, 892 (W.D.Pa.1985).

Dim Sum Cafe of New York, Inc. was legally connected to Time Warner's service, although not for the pay-per-view program. I have found no record of any other theft of cable services or other intellectual property by this defendant. For the violation herein I recommend an additional $3,000 be awarded under section 605(e)(3)(C)(ii). A factor of three times the base award should serve as a reasonable deterrent against future violations. *See, e.g., Wade Communications Partnership v. Grant*, No. Civ. A. 94–5848, 1995 WL 217624 (E.D.Pa. April 12, 1995)(trebling damages where no special circumstances shown); *Cablevision Systems Inc. v. Doudlesox, Inc.*, *supra* (trebling damages where defendant had personal but not commercial subscription to Pay–Per–View event).

Shangrila Grill, Inc. was not authorized to receive any signals at all from plaintiff. In addition to using a de-scrambler it must also have connected its television monitors to Time Warner's cable distribution system without authorization. I have found no record of any other theft of cable services or other intellectual property by this defendant. For the violation herein I recommend an additional $12,000 damages under section 605(e)(3)(C)(ii). The higher factor of four reflects the more aggravated nature of the offense. *See, e.g., Don King Productions/Kingvision v. Maldonado*, No. C–97–3530 WHO MED, 1998 WL 879683 (N.D.Cal. Dec. 11, 1998)(awarding statutory damages of $1250 and award of willfulness of $5000 where defendant may have intercepted signal).

R Bar of Manhattan, Inc. was also not authorized to receive any signals from plaintiff. Unlike the other two defendants, however, this establishment has a record of appropriating property unlawfully. In *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, it defaulted on a claim of copyright violation. The inquest resulted in statutory damages of approximately five times the license fee. 919 F.Supp. at 660. Apparently, that was not enough. I therefore recommend an award of $8,000 under § 605(e)(3)(C)(ii) to, perhaps, persuade this defendant that it is not only lawful to obtain property only as allowed, but also less expensive.

■ Plaintiff also seeks relief for claims under New York Public Service Law § 225.6 and common law. However, as an award under these claims would be duplicative of that under 47 U.S.C. § 605, it would violate "the general principle that precludes double recovery." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir.1998). *See Time Warner Cable of New York City v. Papathanasis*, slip op. at 12; *Time Warner Cable of New York City v. Brown*, No. 97 Civ. 3411(DLC)(NRB), slip op. at 4 n.3 (S.D.N.Y. Aug. 5, 1998); *Time Warner Cable of New York City v. Barnes*, 13 F.Supp.2d at 549.

Section 605(e)(3)(B)(iii) provides that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Plaintiff has submitted an affidavit from William B. Jung, Esq., setting forth the work of the attorneys on the matter and plaintiff's costs. It requests $795 for Mr. Jung's work, based on 5.3 hours at a rate of $150 per hour, and $1,035 for the work of Wayne R. Louis, Esq., based on 11.5 hours at a rate of $90 per hour. Copies of contemporaneous time records are annexed to the affidavit. Plaintiff also requests $75 for the costs of serving the three defendants. My review of the work performed satisfies me that 16.8 hours was a reasonable amount of time expended, and I find the rates per hour quite reasonable for such matters in New York. I therefore recommend that plaintiff be awarded $1,905 in attorney's fees and

costs, to be divided equally among the three defendants.

In sum, I recommend that judgment be entered against Dim Sum Cafe of New York, Inc. for $4,000, together with $635 in attorney's fees and costs; against Shangri-la Grill, Inc. for $15,000, together with $635 in attorney's fees and costs; and against R Bar of Manhattan, Inc. for $9,000, together with $635 in attorney's fees and costs.

November 8, 1999.