**J & J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the May 6, 2006 DeLaHoya/Mayorga Program, Plaintiff,**

v.

**Martha GUZMAN,[1] et al., Defendants.**

**No. 06–CV–6840 (NGG)(RML).**

United States District Court, E.D. New York.

April 4, 2008.

---

**1.** On February 15, 2007, defendant Martha Guzman was dismissed from the case with prejudice.

Julie Cohen Lonstein, Lonstein Law Office, P.C., Ellenville, NY, for Plaintiff.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

On May 8, 2007, this court granted Plaintiff J & J Sports Productions, Inc.'s motion for default judgment and referred the matter to Magistrate Judge Robert M. Levy for a Report and Recommendation ("R & R") with regard to the scope of relief, including damages, costs, and attorney's fees, owed to Plaintiff. (Docket Entry # 15). On February 8, 2008, Judge Levy recommended that Plaintiff be awarded $5,495.00 in damages and $450.00 in costs pursuant to 47 U.S.C. § 605. (Docket Entry # 18.) Judge Levy advised the parties that "[a]ny objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order." (R & R at 200–01.)

Under Fed.R.Civ.P. 72(b), a party may object to a magistrate judge's report and recommendation by serving and filing "specific written objections." Where a party receives clear notice of the consequences, as did Defendants, "failure timely to object to a magistrate's report and recommendation operates as a waiver of fur-

ther judicial review of the magistrate's decision." [2] *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir.2002). In this case, nearly two months have passed since Judge Levy issued his R & R, and Defendants have not filed objections.

Therefore, the court adopts Judge Levy's R & R in its entirety. Plaintiff is awarded $5,495.00 in damages and $450.00 in costs. The Clerk of Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

## REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge.

By Order dated May 9, 2007, the Honorable Nicholas G. Garaufis, United States District Judge, granted plaintiff's motion for entry of a default judgment and referred this matter to me for a report and recommendation with regard to the scope of relief, including damages, costs, and attorney's fees, owed to the plaintiff.[1] For the reasons stated below, I respectfully recommend that plaintiff be awarded $5,495.00 in damages and $450.00 in costs.

### BACKGROUND AND FACTS

Plaintiff J & J Sports Productions, Inc. ("plaintiff" or "J & J Sports") brought this action in July 2007 alleging violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1996). Plaintiff alleges that defendant procured or received pay-per-view cable television services without authorization or consent. (Complaint, filed July 27, 2006 ("Compl."), ¶¶ 18–19.) After defendant failed to appear or answer in this action, plaintiff moved for

---

**2.** Out of an abundance of caution, the court has reviewed the Report and Recommendation, and finds it thorough, well-reasoned, and well-founded in applicable law. *See Urena v. People*, 160 F.Supp.2d 606, 609–10 (S.D.N.Y.2001) (where no timely objection has been made, the "court need only satisfy

itself that there is no clear error on the face of the record").

**1.** On February 15, 2007, defendant Martha Guzman was dismissed from this case with prejudice.

the entry of a default judgment. On May 9, 2007, Judge Garaufis granted plaintiff's motion and referred the matter of damages to me. By Order dated May 11, 2007, plaintiff was given the opportunity to supplement its inquest submission on or before June 1, 2007 and defendant was ordered to file any opposition on or before July 13, 2007. To date, the court has received no communication from defendant.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Cotton v. Slone,* 4 F.3d 176, 181(2d Cir.1993): *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155. 158 (2d Cir.1992); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 487 (S.D.N.Y.1999); *Time Warner Cable of New York City v. Olmo,* 977 F.Supp. 585, 587 (E.D.N.Y.1997). Plaintiff's allegations are as follows:

Plaintiff is a California corporation that owns the commercial distribution rights to the May 6, 2006 DeLaHoya/Mayorga prize-fight ("the Event"). (Compl. ¶¶ 5, 15.) The Event was transmitted via closed circuit television and by encrypted satellite signal. (*Id.* ¶ 15.) For a fee, a customer could receive an unscrambled signal and display the Event to its patrons. (*Id.* ¶¶ 15–17; *see also* Plaintiff's Memorandum of Law, dated Oct. 11, 2006 ("Pl.'s Mem."), at 2.) Plaintiff does not list the minimum licensing fee for commercial establishments in its complaint, its legal memorandum, or its affidavit.

Defendant Tacos El Jarocho Deli Restaurant Inc. ("El Jarocho") is a business located at 5507 Fifth Avenue, Brooklyn, New York. (Compl. ¶ 10.) Plaintiff sent two independent auditors, Anthony Lazaro and Thomas Larkin, to El Jarocho during the broadcast of the Event. (Affidavit of Thomas Larkin, sworn to May 30, 2006 ("Larkin Aff.") and Affidavit of Anthony Lazaro, sworn to Dec. 11, 2006 ("Lazaro Aff.")). At 9:40 p.m. Lazaro entered El Jarocho and observed one television showing the Event with approximately sixteen patrons present in the establishment. (Lazaro Aff.) [2] Lazaro estimated the capacity of the establishment at thirty persons. (*Id.*) At 11:29 p.m., Larkin entered El Jarocho and observed one television showing the Event with approximately twenty-five patrons in the establishment. (*Id.*) [3] Larkin estimated the capacity of the establishment at forty persons. (*Id.*)

Defendant had not contracted with plaintiff to receive or display the Event and was not otherwise authorized to display it. (Affidavit of Joseph Gagliardi, sworn to Sept. 20, 2006 ("Gagliardi Aff."), ¶¶ 6, 8.) Plaintiff asserts that the only way the Event could have been shown in the establishment was if an owner or an agent intentionally committed a wrongful act to receive the satellite signal. (*Id.* ¶ 9.)

Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), and "up to" $100,000 under § 605(e)(3) (C)(ii). (Pl.'s Mem. at 6.) Plaintiff also seeks costs of $450.00 under § 605(e)(3)(B)(iii). (*See* Affidavit of Julie Cohen Lonstein, Esq., sworn to Apr. 26, 2007 ("Lonstein Aff."), ¶ 3).

## DISCUSSION

### 1. *Statutory Damages*

Plaintiff seeks damages under 47 U.S.C. § 605(a), which states, in relevant part:

---

**2.** Lazaro made three headcounts between 9:40 and 9:41 p.m., finding sixteen patrons present the first and second times and fifteen patrons present the final time. (Lazaro Aff.)

**3.** Larkin made three headcounts between 11:29 and 11:31 p.m., finding nineteen patrons present the first time and twenty-five patrons present the next two times. (Larkin Aff.)

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law. *See* 47 U.S.C. § 605(d)(3).

Section 605 further states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff has elected to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), which allows for statutory damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just. . . ." (*See* Pl.'s Mem. at 6.)

The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); *see also Home Box Office v. Champs of New Haven, Inc.*, 837 F.Supp. 480, 484 (D.Conn.1993). Most courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. *See, e.g., Garden City Boxing Club, Inc. v. Rosado*, No. CV 05–1037, 2005 WL 3018704, at *3–4, 2005 U.S. Dist. LEXIS 27108, at *9 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10, representing $54.95 for each of the 18 patrons that the investigator observed in the establishment during the prize fight); *Garden City Boxing Club v. Morales*, No. 05–CV–0064, 2005 U.S. Dist. LEXIS 22989, at *16 (E.D.N.Y. Aug. 18, 2005) (recommending statutory damage award of $3,297, representing $54.95 for each of the 60 patrons who witnessed the event); *Joe Hand Promotions, Inc. v. Hernandez*, No. 03 Civ. 6132, 2004 WL 1488110, at *3, 2004 U.S. Dist. LEXIS 12159, at *11 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); *Googies Luncheonette*. 77 F.Supp.2d at 490 (same); *New Contenders, Inc. v. Diaz Seafood Corp.*, No. 96 Civ. 4701, 1997 WL 538827, at *2, 1997 U.S. Dist. LEXIS 13132, at *8 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron under § 605); *Kingvision Pay–Per–View Corp. v. Prime Time Saloon, Inc.*, slip op., No. 95 CV 1422 (E.D.N.Y. Sept. 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge). As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." *Googies Luncheonette*, 77 F.Supp.2d at 490. *See also Garden City Boxing Club, Inc. v. Bello*, No. CV–05–1300, 2005 WL 2496062, at *3, 2005 U.S. Dist. LEXIS 23115, at *8 (E.D.N.Y. Sept. 20, 2005) (explaining that the per-patron calculation is based on the assumption that each patron would have paid to view the prize fight from home had he or she not had access to a free broadcast at a neighborhood establishment).[4] "Plaintiff is thus

---

4. In *Bello,* the Magistrate Judge recommended a statutory damage award of $2,198, representing $54.95 for each of the 40 patrons who could have viewed the prize fight

fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." *Googies Luncheonette*, 77 F.Supp.2d at 490.

■ I find the per-patron valuation appropriate here. According to the report of the two investigators, there were between approximately sixteen and twenty-five patrons present during the broadcast of the Event. (Larkin Aff. and Lazaro Aff.) I will use the greater number of patrons to calculate the damages in this case because the defendant profited from at least that number of patrons. An affidavit from Joseph Gagliardi, President of J & J Sports, states that a private residence would have been able to purchase the event at the residential price of $54.95. (Gagliardi Aff. ¶ 9(B).) Twenty-five multiplied by $54.95 leads to an award of $1,373.75. I therefore recommend that plaintiff be awarded $1,373.75 in statutory damages, under 47 U.S.C. § 605(e)(3)(C)(i)(II).

### 2. *Enhanced Damages*

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides, in relevant part:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, ... by an amount of not more than $100,000 for

each violation of subsection (a) of this section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements," *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), and is established by the fact that an event is broadcast without authorization. *See Garden City Boxing Club, Inc. v. Polanco*, 228 Fed.Appx. 29, 30–31 (2d Cir.2007); *Googies Luncheonette*, 77 F.Supp.2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. *Kingvision Pay–Per–View Ltd. v. El Rey Del Bistec y Caridad, Inc.*, No. 01–CV–6562, 2001 WL 1586667, at *2–3, 2001 U.S. Dist. LEXIS 20531, at *6–7 (S.D.N.Y. Dec. 12, 2001).

In this case, defendant never contracted for the right to broadcast the Event and, accordingly, was not authorized to intercept, receive or transmit communication of the Event. (*See* Compl. ¶ 18–19.) In order to have received the Event, someone connected with the establishment had to have engaged in some deliberate act. (*See*

---

based on the establishment's capacity. In using the capacity, rather than the number of patrons the investigator observed, the court explained that it was "entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity." *Bello*, 2005 WL 2496062, at *3,

2005 U.S. Dist. LEXIS 23115, at *8. I find this analysis speculative and prefer to hold the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who viewed the Event. *See Garden City Boxing Club. Inc. v. Perez*, No. 05 CV 3713, 2006 WL 2265039, at *6 (E.D.N.Y. Aug. 8, 2006) (rejecting the approach in *Bello* because "although it is entirely possible that more patrons were there before or after the auditor's visit, it is also entirely possible that there were not.").

*id.*) Since the transmission of the Event was electronically coded and the establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (*Id.* ¶ 19.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. *See Fallaci v. The New Gazette Literary Corp.*, 568 F.Supp. 1172, 1173 (S.D.N.Y.1983).

On the other hand, none of the four willfulness factors described above is present in this case. *See Kingvision v. El Rev Del Bistec y Caridad, Inc.*, 2001 WL 1586667, at *2–3, 2001 U.S. Dist. LEXIS 20531, at *7. Plaintiff does not offer evidence that El Jarocho has engaged in any other pay-per-view theft violations. Moreover, plaintiff's investigators were not charged a cover fee to enter defendant's establishment and the Event was shown on only one television set. (Larkin Aff. and Lazaro Aff.) Further, plaintiff does not allege that the defendant advertised the display of the Event in order to entice customers into the establishment. (*Id.*) Rather than attempting to establish any of the four willfulness factors, plaintiff argues that enhanced damages are appropriate because, once the means are in place to unlawfully intercept pay-per-view programming, pay-per-view theft is likely to happen repeatedly. (Pl.'s Mem. at 6.)

■ In light of the circumstances surrounding the display of the Event, I respectfully recommend that an additional award of $4,121.25 in enhanced damages, *i.e.*, a factor of three times the per-patron amount, be assessed against defendant for willful violation of the Communications Act. *See Kingvision Pay–Per–View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *4, 2004 U.S. Dist. LEXIS 6261, at *11 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts"); *Googies Luncheonette*, 77 F.Supp.2d at 491 (imposing additional damage award of $3,000, three times the base award, against defendant with no record of any other theft of cable services or other intellectual property, to "serve as a reasonable deterrent against future violations"); *see also Time Warner Cable v. Taco Rapido Rest.*, 988 F.Supp. 107, 112 (E.D.N.Y.1997) (imposing enhanced damages award of $5,000 where defendant displayed boxing match to approximately seventy-five patrons on one television set); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 660 (S.D.N.Y.1996) (increase of five times the base award for willful acts).

### 3. *Attorney's Fees and Costs*

As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir.1993); *Kingvision Pay–Per–View, Ltd. v. Castillo Rest. Corp.*, No. CV 06–6253, 2007 U.S. Dist. LEXIS 68958, at *8 (E.D.N.Y. Sept. 18, 2007). Plaintiff seeks only reimbursement for costs in the amount of $450.00, which includes $350.00 for filing fees and $100.00 for service of process. (*See* Lonstein Aff. ¶ 3.) The costs for filing fees and service of process are reasonable and I recommend that plaintiff be awarded $450.00 in costs.

### CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff be awarded $5,495.00 in damages and $450.00 in costs. Any objection to this Report and Recom-

mendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); *see also* Fed.R.Civ.P. 72, 6(a), 6(e).