**J&J SPORTS PRODUCTIONS, INC., Plaintiff,**

v.

**291 BAR & LOUNGE, LLC, d/b/a Area 51, and Dennis Caba, Individually and as an officer, director, and/or shareholder of 291 Bar & Lounge, LLC, Defendants.**

**No. 08 CV 1824(RJD)(VVP).**

United States District Court, E.D. New York.

Aug. 19, 2009.

470

Paul J. Hooten, Paul J. Hooten & Associates, Mt. Sinai, NY, for Plaintiff.

### ORDER

DEARIE, Chief Judge.

This Court has reviewed the Report & Recommendation of Magistrate Judge Viktor V. Pohorelsky, dated July 21, 2009. No objections have been filed. The Court adopts the Report & Recommendation in its entirety.

Statutory damages in the amount of $3,000.00, as well as fees and costs in the amount of $1,332.50, are hereby awarded to plaintiff and against defendant 291 Bar.[1]

No damages are awarded against defendant Dennis Caba.

SO ORDERED.

### REPORT AND RECOMMENDATION

POHORELSKY, United States Magistrate Judge.

The Honorable Raymond J. Dearie referred this matter to me for a report and recommendation regarding the amount of damages and attorney's fees, if any, to be awarded to the plaintiff, J&J Sports Productions, Inc. (hereafter "J&J"), as against the defaulting defendants 291 Bar & Lounge, LLC (hereafter "291 Bar"), and Dennis Caba. This case involves the defendants' unauthorized interception, reception, and publication of the plaintiff's closed-circuit telecast of a boxing match between Oscar de la Hoya and Ricardo Mayorga (hereafter "the Fight") on May 6, 2006, in violation of the Cable Communications Policy Act of 1984 (hereafter the "Cable Act"), 47 U.S.C. §§ 553 and 605. The plaintiff is seeking statutory damages under sections 553(c) and 605(e)(3).

1. *Liability*

■ The plaintiff alleges violations of both 47 U.S.C. §§ 553 and 605 on the part of 291 Bar and Mr. Caba. *See* Complaint ¶¶ 23, 30. Although these sections overlap, there are meaningful distinctions between the two. Whereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication. *See Int'l Cablevision, Inc. v. Sykes,* 75 F.3d 123, 132–133 (2d Cir.1996). Ordi-

---

1. The Court notes one minor typographical error located at page 10 of the Report & Recommendation for clarification. Statutory damages, fees and costs should be awarded against "defendant 291 Bar," rather than against "defendant J&J."

narily, however, plaintiffs cannot recover under both statutes for the same conduct. *See Kingvision Pay–Per–View, Ltd. v. New Paradise Restaurant,* No. 99–CV–10020, 2000 WL 378053, at *2 (S.D.N.Y. Apr.11, 2000). Here, J&J has elected to recover damages under section 605 rather than under section 553. *See* Plaintiff's Memorandum of Law in Support of Request for Judgment by Default [hereafter "Memorandum of J&J"], dated May 18, 2009, p. 6. Accordingly, the court will assess liability and (provided liability is established) the amount of damages under section 605. *See Time Warner Cable v. Taco Rapido Rest.,* 988 F.Supp. 107, 110 (E.D.N.Y.1997). That section states, in pertinent part, that "no person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). The Cable Act creates a private cause of action for an aggrieved party. 47 U.S.C. § 605(e)(3).

The plaintiff filed the instant complaint in May 2008. Both defendants failed to answer, respond, or appear otherwise, and the plaintiff moved for a default judgment. In February 2009, the clerk of court entered default against 291 Bar and Mr. Caba pursuant to Federal Rule of Civil Procedure 55(a), and Judge Dearie thereafter granted the motion for default judgment.

■ Given the default, the well-pleaded allegations of the complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g., Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,*

973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981). The allegations of the complaint thus establish the following facts leading to liability. The plaintiff concluded a license agreement to exhibit, via closed-circuit television, the May 6, 2006 boxing match between Oscar de la Hoya and Ricardo Mayorga. *See* Complaint ¶ 8. The plaintiff paid "substantial fees" for the exclusive right to disseminate the Fight in order that it could be shown at various closed-circuit locations that entered into agreements with, and paid the requisite fees to, J&J. *See id.* ¶¶ 8–9. The fight was transmitted in an electronically coded or "scrambled" format, which, upon payment of the fee to J&J, could be decoded with equipment that J&J provided. *See id.* ¶¶ 12, 14. The complaint alleges [1] that the defendants willfully and unlawfully intercepted and received the signal of the Fight, and then exhibited it to its patrons in the hopes of gaining commercial advantage, specifically the patronage of customers who would otherwise have been able to view the Fight only at a properly authorized commercial establishment for a cover charge. *See id.* ¶¶ 15–19. The defendants neither purchased the Fight for exhibition nor entered into a contractual agreement with J&J. *See id.* ¶ 13.

Although the pleadings do not clearly state that the event originated as a satellite signal, which is considered a radio communication under Title 47, *see Int'l Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1008 (2d Cir.1993) (quoting 130 Cong. Rec. 31,874, *reprinted in* 1984 U.S.C.C.A.N.

---

1. Typically, in cases such as this, plaintiffs employ auditors or investigators to visit locations suspected of illegally pirating the plaintiffs' signal during the telecast in order to verify whether the event is being exhibited, and to note the particular circumstances of the exhibition and the venue. The complaint does not allude to such a practice in this case, but this omission is not fatal to the plaintiff's claims inasmuch as the complaint adequately alleges the defendants' violations.

4746), they do assert that the defendants could not have intercepted the event without "electronic decoding equipment and satellite coordinates necessary to receive the signal of the Event." *See* Complaint ¶ 12–14. The reference to satellite signals provides a sufficient basis to establish that the Fight originated with a radio transmission such that the defendants' interceptions violated section 605. *See Kingvision Pay–Per–View, Ltd. v. Jasper Grocery,* 152 F.Supp.2d 438, 440–41 (S.D.N.Y.2001).

■ J&J asserts liability against both the corporate defendant and Dennis Caba, individually, who is alleged to be the owner of 291 Bar. *See* Complaint. ¶ 6. This, however, constitutes the entire extent of the allegations against Mr. Caba individually. Individual liability under the Cable Act requires that the individual authorize the underlying violations. *See J & J Sports Productions, Inc. v. Benson,* No. 06–CV–1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007). Put differently, the complaint must establish that the individual had a "right and ability to supervise" the violations, as well as an obvious and direct financial interest in the misconduct. *Softel, Inc., v. Dragon Medical and Scientific Communications, Inc.,* 118 F.3d 955, 971 (2d Cir.1997). The complaint here makes no such allegations. In such circumstances, it would not be appropriate to hold an individual jointly and severally liable along with the business entity. *See generally J & J Sports Productions v. Daley,* No. 06–CV–238, (E.D.N.Y. Feb. 15, 2007) (discussing and applying the legal bases for imposing individual liability in cable theft cases). In *Daley,* the plaintiff made even more extensive allegations of control and supervision on the part of the individual owner than in the instant case, but the court nevertheless declined to extend individual liability to the defendant. *Id.* (declining to impose individual liability in spite of conclusory allegations in complaint that individual had "supervisory control over the infringing activities"); *contra Garden City Boxing Club v. Extasis Corp.,* No. 07–CV–3853, 2008 WL 3049905, at *8 (E.D.N.Y. Aug. 1, 2008) (extending liability against individual defendant for similar factual allegations). Here, the plaintiff has made no allegation that Mr. Caba was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it. To the extent that J&J wishes to assert liability against an individual in the future, it should make adequately detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership of the offending entity.[2]

2. *Damages*

■ On the issue of damages, in contrast to liability, the court may not accept the allegations of the complaint as true, but rather must make an independent determination of the appropriate relief to be awarded. *See, e.g., Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 154–55 (2d Cir.1999); *SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 814 (2d Cir.1975). The court need not hold an evidentiary hearing, however, and here the court has received affidavits and a memorandum in lieu of holding an evidentiary hearing on damages issues. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 110 (2d Cir.1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary

---

**2.** The court recognizes that this requirement may, in some circumstances, be difficult for the plaintiff to meet. This is particularly true when the defendant defaults and there is no discovery available. Difficulty in meeting this burden, however, is not a license to ignore and dispense with ordinary pleading requirements. If the plaintiff wishes to assert liability against an individual, it must adduce an adequate basis for doing so.

for the District Court to hold a hearing', as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993). As no party has objected to that procedure, the court has considered affidavits submitted by the plaintiff, and concludes that they provide a basis for awarding the damages recommended below.

Having elected to receive statutory damages,[3] the plaintiff is entitled to an award "as the court considers just," between a range of $1,000 to $100,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Full costs, including reasonable attorney's fees, may also be granted. 47 U.S.C. § 605(e)(3)(B)(iii).

Section 605 vests the court with broad discretion in determining statutory damages. Courts in this Circuit have used essentially two approaches in exercising that discretion. *See Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 489 (S.D.N.Y.1999). The first calculates damages on the basis of the number of patrons observed in the defendant establishment, and then multiplies that figure by a set amount. *See, e.g., Taco Rapido,* 988 F.Supp. at 111 (awarding plaintiff $50 for each patron). This approach seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *See J & J Sports Productions, Inc. v. Meyers,* No. 06–CV–5431, 2007 WL 2030288, at *4 (S.D.N.Y. July 16, 2007). A slight variation to this approach awards the plaintiff the license fee the defendant, based on its capacity, would have paid if it had legally purchased the event for exhibition. *See Benson,* 2007 WL 951872, at *5 (awarding $1,200.00 as the license fee defendant, based on capacity, would have paid to the plaintiff); *Garden City Boxing Club, Inc. v. Rosado,* No. 05–CV1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005). The second approach employed in this Circuit makes an award of a flat sum per violation. *See Kingvision Pay–Per–View Ltd. v. Jasper Grocery,* 152 F.Supp.2d 438, 442–43 (S.D.N.Y.2001).

▮▮ Here, the plaintiff suggests that 150 patrons were observed in the defendant's establishment during the Fight. *See* Pl. Mem., p. 3. This suggestion is not adequately supported in the record. The plaintiff's memorandum of law and the accompanying affidavit of Joseph Gagliardi both refer to an affidavit of the investigator in this case, John Hepworth, but no such affidavit was attached to the plaintiff's submissions. Mr. Gagliardi's affidavit does not prove helpful in this regard because it is not based on personal knowledge. Mr. Hepworth's affidavit would be the sort of sworn evidence ordinarily required in lieu of testimony, and probably would have sufficiently established that 150 patrons were present at 291 Bar, if he had so observed. Without such evidence, the court does not have a meaningful basis on which to make a determination as to the number of patrons or the establishment's capacity. Since there is no evidence to provide facts for a damages determination based on patronage, the court has no basis for an award above the statutory minimum of $1,000.00. *See Kingvision Pay–Per–View Ltd. v. Castillo Rest. Corp.,* No. 06–

---

**3.** The Cable Act allows for recovery of the actual damages that a plaintiff has suffered, occasioned by the defendant's conduct. As actual damages frequently prove difficult to establish, plaintiffs generally elect to recover statutory damages instead under 47 U.S.C. § 605(e).

CV–617, 2007 WL 841804, at \*5 (E.D.N.Y. Jan. 16, 2007).

The plaintiff is entitled to an enhancement, however, if it establishes that the underlying violation was willful and undertaken for commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). In such circumstances, the court, in its discretion, may award up to $100,000.00 in additional damages. The plaintiff alleged in the complaint that the defendant willfully violated the statute. *See* Complaint ¶ 15. Taken as true, it is difficult to see how the defendant could have involuntarily intercepted—*and exhibited*—the Fight, as the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed. *See Googies Luncheonette,* 77 F.Supp.2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."); *Taco Rapido,* 988 F.Supp. at 111 ("In order for [the defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act."). The complaint also alleges that 291 Bar violated section 605 with the goal of drawing increased patronage to the establishment. *See* Complaint ¶¶ 16–18. In the face of deliberate, willful conduct undertaken for financial advantage, it is appropriate here to treble the amount of statutory damages, and award a total of $3,000.00. *See Kingsvision Pay–Per–View, Ltd., v. Soluna Bar Lounge, Inc.,* 06–CV–5066, 2008 WL 2673340, at \*5 (E.D.N.Y. May 27, 2008); *Kingvision Pay–Per–View, Ltd. v. Rojas Deli Grocery, Inc.,* No. 06–CV–3042, 2007 WL 2908068, at \*4, (E.D.N.Y. Oct. 5, 2007); *J & J Sports Production, Inc. v. Urena,* No. 06–CV–3703, 2007 WL 2902964, at \*5 (E.D.N.Y. Sept. 28, 2007). Such an amount reflects the seriousness of the conduct, affords the plaintiff sufficient recovery based on the evidence in the record, and should provide a deterrent to future violations.

### 3. Attorney's Fees

█ Section 605(e) mandates that a prevailing plaintiff shall recover reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii). The court calculates this fee by multiplying the number of reasonable hours expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). To facilitate this analysis, the Second Circuit requires that attorneys applying for court-ordered compensation document the application with contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48 (2nd Cir.1983); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 186–189 (2d Cir.2008).

█ The plaintiff has submitted an affidavit by its attorney for $1,150.00 in attorneys' fees. This amount includes 2.5 hours of attorney time at a rate of $250.00 per hour, and 7 hours of paralegal time at a rate of $75.00 per hour. *See* Affidavit in Support of Attorney Fees and Costs ¶ 7. These submissions do not qualify as "contemporaneous" billing records, as they consist of nothing but a self-generated table included in the affidavit. *See Garden City Boxing Club, Inc. v. Tacqueria La Mixteca, Inc.,* No. 07–CV–4479, 2008 WL 4107130, at \*4 (E.D.N.Y. Sept. 4, 2008). The 2.5 hours of attorney time seems reasonable given the cumulative, boilerplate nature of Cable Act cases. However, that same consideration renders excessive counsel's hourly rate of $250, given the work done by the attorney. *See Kingsvision Pay–Per–View, Ltd., v. Soluna Bar Lounge, Inc.,* 06–CV–5066, 2008 WL 2673340, at \*6–7 (E.D.N.Y. May 27, 2008)

(holding excessive counsel's charged hourly rate of $250); *Joe Hand Promotions, Inc. v. 143–08 94th Corp.*, No. 07–CV–2339, 2008 WL 3243886, at *5 (E.D.N.Y. Aug. 7, 2008) (reducing counsel's fees and chastising him for submissions). Given the lack of contemporaneous documentation and the excessiveness of the rates, the court recommends reducing plaintiff's attorney fees by 25% to a total of $862.50.

The plaintiff also requests recovery of its filing fee, $350.00, and costs for its process server in the amount of $120.00. Although evidence was submitted to substantiate the costs for service of process, affidavits of service were filed reflecting service on both the individual and corporate defendant by a licensed process server, and the reimbursement requested is well within the norm. The court therefore recommends that the plaintiff be awarded costs for service of process as well as its filing fees of $350.00.

### CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that statutory damages in the amount of $3,000.00, and fees and costs in the amount of $1,332.50, be awarded in favor of the plaintiff and against the defendant J&J, and that no award be made as against the defendant Dennis Caba.

\*    \*    \*    \*    \*    \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.),

*cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**