CIRCUITO CERRADO, INC., Plaintiff,

v.

PIZZERIA Y PUPUSERIA SANTA RO-SITA, INC., d/b/a, Santa Rosita Restaurante y Pupuseria, and Noe G. Valle, Defendants.

No. 10 CV 108(DRH)(AKT).

United States District Court,
E.D. New York.

March 14, 2011.

Paul J. Hooten, Paul J. Hooten & Associates, Mt. Sinai, NY, for Plaintiff.

## ORDER

HURLEY, Senior District Judge:

By Order dated July 15, 2010, the Court entered a default judgment against defendants and referred this matter to Magis-

trate Judge Tomlinson, pursuant to 28 U.S.C. § 636, for a Report and Recommendation as to the appropriate amount of damages, attorneys' fees and costs to be awarded to plaintiff. On February 14, 2011, Judge Tomlinson issued a Report and Recommendation recommending that individual liability should not be imposed against defendant Noe G. Valle, and that damages and costs be awarded in the amount of $20,350. (Docket No. 13.) Plaintiff did not request attorney fees. (Aff. of Paul J. Hooten, docket no. 12, ¶ 34.)

On February 16, 2011, plaintiff filed proof of service of a copy of the Report and Recommendation upon the defendants. More than fourteen (14) days have elapsed since service of the Report and Recommendation, and neither party has filed any objections to it.

Pursuant to 28 U.S.C. § 636(b) and Fed. R.Civ.P. 72, this Court has reviewed the Report and Recommendation for clear error, and finding none, now concurs in both its reasoning and its result. Accordingly, this Court adopts the February 14, 2011 Report and Recommendation of Judge Tomlinson as if set forth herein. The Court therefore directs that judgment be entered as follows: plaintiff recovers from defendant Pizzeria y Pupuseria Santa Rosita, Inc., d/b/a, Santa Rosita Restaurante y Pupuseria the amount of $20,350.00. The Court further directs the Clerk of Court to vacate the entry of default judgment against defendant Noe G. Valle. Upon entry of judgment, the Clerk of Court shall close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

### I. PRELIMINARY STATEMENT

Plaintiff Circuito Cerrado, Inc. ("Plaintiff" or "CCI") commenced this action against Defendants Pizzeria Y Pupuseria Santa Rosita, Inc., d/b/a Santa Rosita Restaurante Y Pupuseria ("Pizzeria Y") and Noe G. Valle, (collectively, "Defendants") for violations of the Federal Communications Act of 1934 ("FCA"), codified at 47 U.S.C. §§ 605 and 553. *See* DE 1. After Defendants failed to answer or otherwise move with respect to the Complaint, Defendants' default was noted by the Clerk and the Plaintiff moved for default judgment. *See* DE 5, 7. District Judge Hurley entered a default judgment against the Defendants and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate in this matter, including any attorneys' fees.

The Plaintiff seeks an award of statutory and enhanced damages equaling $20,000, plus 9% pre-judgment interest and costs, for a total of $22,120. *See* DE 11–12. Based on the information submitted by Plaintiff and for the reasons set forth below, I respectfully recommend to Judge Hurley that damages be awarded against only Defendant Pizzeria Y in the amount of $ 20,350.

### II. BACKGROUND

The Plaintiff entered into a closed-circuit television license agreement whereby it received the exclusive right to exhibit the closed-circuit telecast of the June 10, 2009 CONCACAF World Cup Qualifier Tournament which included the *Honduras v. El Salvador* match (subsequently referred to as the "Event") at various commercial locations throughout New York. *See* Compl. ¶ 8. The Event could only be exhibited in an establishment that was contractually authorized to do so. *Id.* ¶ 10. Therefore, the transmission of the Event was electronically coded or "scrambled" and could only be seen clearly after it was

decoded with electronic decoding equipment. *Id.* ¶ 12.

Pursuant to the license agreement, Plaintiff marketed and distributed the closed-circuit rights by contracting with various establishments for a fee. *Id.* ¶ 11. Those establishments which contracted with Plaintiff were provided with the decoding equipment and satellite coordinates necessary to receive the signal of the Event. *Id.* ¶ 14. Defendants, however, did not contract with Plaintiff to obtain the rights to broadcast the Event. *Id.* ¶ 13. Nevertheless, on June 10, 2009, Defendants intercepted and/or received the signal of the Event and then transmitted, divulged and published the same to its patrons. *Id.* ¶ 15.

## III. DISCUSSION

### A. Default

■ A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06–CV–1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993)); *BMG Music v. Pena,* No. 05–CV–2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007). The Complaint alleges violations of 47 U.S.C. §§ 553(a)(1) and 605(a). *See* Compl. ¶¶ 21–35. Although these sections overlap,

> section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, [while] section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication.

*J & J Sports Prods. v. 291 Bar & Lounge,* 648 F.Supp.2d 469, 471 (E.D.N.Y. Aug. 19, 2009). However, in light of the Second Circuit's determination that a satellite signal is considered a radio communication under Title 47 (*see Int'l Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1008 (2d Cir.1993)), "both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered radio communications." *Joe Hand Promotions, Inc. v. Fofana,* No. 06 CV 2099, 2007 WL 2298372, at *4 (citing *Cmty. Television Sys., Inc. v. Caruso,* 284 F.3d 430, 434–35 (2d Cir.2002)); *see also J & J Sports Prods. v. Welch,* No. 10–CV0159, 2010 WL 4683744, at *2 (E.D.N.Y. Nov. 10, 2010) ("Section 553 and 605 apply, respectively, to cable and radio communications, but both provisions apply where a cable-borne transmission originates as a radio transmission.").

■ Since Defendants' default is deemed an admission of all the well-pleaded allegations in Plaintiff's complaint, Defendants have thus admitted to misappropriating Plaintiff's licensed exhibition of the Event, the transmission of which was electronically coded or "scrambled," when they intercepted, received and transmitted the Event without authorization. Compl. ¶¶ 12–19. Although the Complaint does not clearly state that the Event originated as a satellite signal, Plaintiff mentions that in order for the signal to be received, it had to be decoded with electronic decoding equipment along with satellite coordinates. *Id.* ¶¶ 12–14. This reference provides a sufficient basis to establish that the Event originated with a radio transmission and that Defendants' unauthorized interception violated Sections 553 and 605. *See 291 Bar & Lounge,* 648 F.Supp.2d at 472–73.

■ However, a more difficult question is whether individual liability should be imposed against Defendant Noe G.

Valle, whose only mention in the entire Complaint is the allegation that he is the owner of Pizzeria Y. Compl. ¶ 6. Individual liability under the Federal Communications Act requires that the individual authorize the underlying violation. *See 291 Bar & Lounge*, 648 F.Supp.2d at 473; *Welch*, 2010 WL 4683744, at *6. "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *291 Bar & Lounge*, 648 F.Supp.2d at 473 (quoting *Softel, Inc. v. Dragon Medical and Scientific Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir.1997)).

Here, the Plaintiff not only fails to allege that Defendant Valle was present on the night of the violation, but it also leaves out the necessary allegation that Valle authorized or supervised the violation. Courts which have more recently addressed this issue of a lack of basic pleading have sided against individual liability. *See 291 Bar & Lounge*, 648 F.Supp.2d at 473 (finding that "plaintiff has made no allegation that [individual defendant] was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it."); *J & J Sports Prods v. Daley*, No. CV 06–0238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007) ("[T]here is nothing other than speculation to support the conclusion that [individual defendant] played any part in the violations of the FCA committed by [the defendant establishment], and even less to support the conclusion that any role he did play would warrant imposing individual liability.") Conversely, the courts which have found individual liability are grounded in somewhat stronger factual contentions than the

case at bar.[1] *See Welch*, 2010 WL 4683744, at *6 (finding individual liability where complaint alleges that defendant "was the individual with supervisory capacity and control over activities occurring within the Establishment on [the date of violation];" *J & J Sports Prods. v. Benson*, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007) (same)). Accordingly, since Plaintiff's only allegation against Mr. Valle is mere ownership of the violating entity, I am respectfully recommending to Judge Hurley that individual liability should not be imposed against Defendant Noe G. Valle. As such, the Defendants should not be held jointly and severally liable.

**B. Damages**

■■ A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05–CV–0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir.1995)). Plaintiff, however, must still prove damages. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999). Therefore, the only question remaining is whether Plaintiff has provided adequate support for the relief he seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981).

---

1. The one exception appears to be in *Garden City Boxing Club, Inc. v. Extasis Corp.*, No. 07–CV–3853, 2008 WL 3049905 (E.D.N.Y. Aug. 1, 2008) which found individual liability on the mere allegation that the defendant owned the establishment. *Extasis Corp.*, 2008 WL 3049905, at *8. However, this finding was acknowledged and dismissed by the court in *291 Bar & Lounge*, which dealt with similar circumstances a year later.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether detailed affidavits or documentary evidence are sufficient. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1989). "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *La Barbera v. Les Sub-Surface Plumbing, Inc.*, No. 06–CV–3343, 2008 WL 906695, at *3 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)). The Plaintiff initially submitted its memorandum of law in support of its request for judgment by default ("Pl.'s Mem.") with exhibits annexed, including the affidavit of private investigator Jonathan H. Tisk and the affidavit of Juan Martinez, Vice–President of Operations for CCI. *See* DE 6. After the Court requested additional supporting materials from Plaintiff [DE 9], CCI submitted the following documents in furtherance of its request for a default judgment: (1) Affidavit for judgment by default by Paul J. Hooten ("Hooten Aff."); and (2) Supplemental Affirmation of Paul J. Hooten in further support for judgment by default ("Hooten Supp. Aff."). *See* DE 11, 12. The Court finds that pursuant to the applicable case law and the affidavits submitted by the Plaintiff, there is enough evidence to support an award of damages without a further hearing.

### 1. Statutory Damages

As an initial matter, despite the numerous opportunities provided to Plaintiff to specifically identify the damages sought under the FCA (*see* DE 9 and Electronic Order of Jan. 26, 2011), the Court nevertheless received papers alleging actual and statutory damages under both Sections 553 and 605. *See Hooten Supp. Aff.* ¶¶ 8–9, 15–25. However, the law in this Circuit is clear that a plaintiff may recover under only one of the statutes. *See, e.g., 291 Bar & Lounge*, 648 F.Supp.2d at 472; *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 CV 1878, 2007 WL 2891016, at *3 (E.D.N.Y. Sept. 28, 2007); *Kingvision Pay–Per View, Ltd. v. Autar*, 426 F.Supp.2d 59, 62 (E.D.N.Y.2006); *New Contenders, Inc. v. Diaz Seafood Corp.*, 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997) (citing *Int'l Cablevision Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir.1996)).

Because Plaintiff failed to specifically identify under which Section it seeks to recover, the Court will assess damages under § 605 since that provision allows for a greater recovery than does § 553. *See J & J Sports Prods., Inc. v. Alvarez*, No. 07 Civ. 8852, 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009). Furthermore, despite the fact that Plaintiff argues its actual damages are $13,242.50, the Court is not convinced by the arguments proffered by Plaintiff to support this figure. Instead, the Court finds that Plaintiff's actual damages are too difficult to ascertain. *See 291 Bar & Lounge*, 648 F.Supp.2d at 474 n. 3 ("'As actual damages frequently prove difficult to establish, plaintiffs generally elect to recover statutory damages instead' under 47 U.S.C. § 605(e)."); *Kingvision Pay–Per–View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *3 (S.D.N.Y. Apr. 5, 2004) ("Statutory damages are appropriate where actual damages are difficult to prove."). Therefore, this Court, like the majority of courts handling similar actions, will award Plaintiff statutory damages as permitted under § 605.

Section 605(e) of the FCA permits an aggrieved party to elect to

recover either actual damages suffered as a result of the violation—and any profits of the violator that are attributable to the violation—or statutory damages not less than $1,000 or more than $10,000 for each violation. *See* 47 U.S.C. § 605(e)(3)(C)(i). "The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court." *J & J Sports Prods. v. Hot Shots, Inc.,* No. CV–09–1848, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010); *see also 291 Bar & Lounge,* 648 F.Supp.2d at 474 ("Section 605 vests the court with broad discretion in determining statutory damages."). Courts in this Circuit apply one of two methods in calculating statutory damages regarding cases involving the unauthorized receipt and exhibition of pay-per-view events. *See 291 Bar & Lounge,* 648 F.Supp.2d at 474; *Autar,* 426 F.Supp.2d at 63. Where the exact number of patrons is unknown, courts have awarded a flat sum per violation. *See Autar,* 426 F.Supp.2d at 63. However, when there is evidence of the number of patrons present at the unauthorized broadcast, "courts multiply the number of patrons present ... by a specific dollar amount, typically (but not always) the customary residential charge for the pay-per-view event being shown." *El Norteno Restaurant,* 2007 WL 2891016, at *3; *see also 291 Bar & Lounge,* 648 F.Supp.2d at 474 (calculating damages based on "the number of patrons observed in the defendant establishment" and then multiplying that figure by a set amount). In this District, courts have recently used $54.95, which is the price an individual would have to pay to view the event at home. *See Hot Shots,* 2010 WL 3522809, at *2; *J & J Sports Prods. v. Arhin,* No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. Apr. 17, 2009).

 Plaintiff alleges that the unauthorized broadcast occurred on June 10, 2009. *See* Hooten Supp. Aff. ¶ 2. Although what constitutes a "violation" is not defined in § 605, "most cases applying the statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Garden City Boxing Club, Inc. v. Perez,* No. 05 CV 3713, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006). Therefore, the Court is only dealing with one § 605 violation here. Furthermore, a private investigator who was present the night of the violation stated that he counted 150 patrons present at Defendants' broadcast of the Event. *See* Pl.'s Mem. Ex. A. Accordingly, Plaintiff argues that damages are calculated by multiplying 150 patrons by $54.95 (the residential pay-per-view cost) totaling $8,242.50. *See* Hooten Supp. Aff. ¶ 22. This figure, which falls within the allowable statutory damages provision under § 605 is what the Court believes should resemble the statutory damages available to Plaintiff.

### 2. *Enhanced Damages*

 The Plaintiff maintains that its damages should be enhanced to $20,000 pursuant to § 605. *See* Hooten Supp. Aff. ¶ 32. Section 605 states that

> [i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference to its requirements.'" *J & J Sports Prods. v. Echeverria,* No. 06 CV 2894, 2007 WL 1160423, at *3 (E.D.N.Y. Mar. 16, 2007) (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 127, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). It has been determined that "[t]he broadcast of an event

without authorization is a deliberate act, and thus establishes willfulness." *Welch,* 2010 WL 4683744, at *4; *Hot Shots,* 2010 WL 3522809, at *2 (same). Courts typically consider various factors in determining when enhanced damages are justified. These include "(i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Hot Shots,* 2010 WL 3522809, at *2; *see also Welch,* 2010 WL 4683744, at *4.

▇▇▇ The Plaintiff alleges that Defendants' interception, receipt and broadcast were done knowingly and unlawfully as they could not have obtained the transmission of the Event without committing wrongful acts. *See* Hooten Supp. Aff. ¶¶ 10–14. This Court agrees. *See 291 Bar & Lounge,* 648 F.Supp.2d at 475 ("[I]t is difficult to see how the defendant could have involuntarily intercepted—and *exhibited*—the Fight, as the transmission had to be decoded with electronic decoding equipment in order for the signal to be received and displayed."); *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F.Supp.2d 485, 490 (S.D.N.Y.1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Based on Defendants' willfulness, the Plaintiff argues that damages should be enhanced to $20,000. *See* Hooten Supp. Aff. ¶ 32.

However, the Plaintiff has not presented any evidence of prior violations by the Defendants. In addition, the only "actual damages" for which Plaintiff has provided supporting evidence is the licensing fee of $700 which Defendants would have had to pay to lawfully show the Event. *See* Hooten Supp. Aff. Ex. B; Pl.'s Mem. Ex. B ¶ 8 ("For example, for this particular event, if a commercial establishment had a maxi-

mum fire code occupancy of 90 persons, the commercial sublicense fee would have been $700.00."). Furthermore, in addition to not providing evidence for the remaining factors, Plaintiff acknowledges that those who pirate "do not generally advertise the fact;" "it is extremely unlikely that a pirate establishment would increase the costs of food or drink;" and pirate establishments "do not, and likely will not, ever charge a cover or door charge to their customers." *See* Pl.'s Mem. Ex. B ¶¶ 15–17.

Despite these shortcomings, the Plaintiff is entitled to enhanced damages "because the record demonstrates that the defendants affirmatively and willfully intercepted the Event for financial gain, and that there is no way that the defendants could have inadvertently intercepted plaintiff's broadcast." *Welch,* 2010 WL 4683744, at *4. In these circumstances, "it is appropriate to assess enhanced damages in conjunction with statutory damages." *Id.* at *5. Plaintiff cites to numerous cases where the court awarded enhanced damages that were three times the statutory damages. However, those cases involved substantially different circumstances from those present here in that they all involved significantly smaller statutory damage awards. In the majority of the cases cited by Plaintiff, the statutory damages awarded were $1,000, the lowest amount allowed under § 605. The smaller awards were the result of the per-patron computation in those cases yielding a figure below the $1,000 threshold. *See J & J Sports Prods., Inc. v. Forbes,* No. 07–CV–4394, 2008 WL 5263732, at *5–6 (E.D.N.Y. Dec. 17, 2008); *J & J Sports Prods., Inc. v. Rodrigues,* No. 05 CV 5805, 2007 WL 1726462, at *6–7 (E.D.N.Y. Apr. 19, 2007); *J & J Sports Prods., Inc. v. Drake,* No. 06 CV 246, 2006 WL 2927163, at *4–5 (E.D.N.Y. Oct. 11, 2006). And in no case was the statutory amount above $3,000. *See Hot Shots,* 2010

WL 3522809, at *2–3; *Googies Luncheonette*, 77 F.Supp.2d at 490.[2] Therefore, in its discretion, the Court finds that enhanced damages equating to three times the statutory damages limit would be improper here.

However, Plaintiff's request for total statutory and enhanced damages of $20,000 is not unreasonable in light of Defendants' willful violation and interception of the Event for financial gain as well as the statute's objective of deterring future violations. In fact, such an enhancement would amount to less than two times the amount of statutory damages awarded. *See Welch*, 2010 WL 4683744, at *5 ("In light of the statutory objective of deterring future violations of 47 U.S.C. § 605, coupled with defendants' willful violation of this provision, the court finds that enhanced damages of $9,341.50, or two times the amount of basic statutory damages, are appropriate in this case."). In light of these decisions from cases with similar circumstances, I respectfully recommend to Judge Hurley that statutory and enhanced damages be awarded to the Plaintiff in the amount of $20,000.

### 3. Pre-judgment Interest

In addition, the Plaintiff asserts that it is entitled to interest calculated at 9% running from June 10, 2009 for a total of $1,650. *See* Hooten Supp. Aff. ¶¶ 34–35. However, § 605 does not refer at all to interest and the "majority of courts to have considered the issue have denied an award of prejudgment interest." *See Hot Shots*, 2010 WL 3522809, at *3. Although a few courts in this District have granted pre-judgment interest at a rate of 9% pursuant to N.Y. C.P.L.R. § 5004 under similar circumstances, the more recent decisions addressing this issue have denied such requests. *See, e.g., Hot Shots*, 2010 WL 3522809, at *3; *Autar*, 426 F.Supp.2d at 65. The leading case on this issue, *Kingvision Pay–Per–View Ltd. v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226 (S.D.N.Y. Apr. 5, 2004), denied pre-judgment interest and reasoned that since claims for punitive damages are an exception to pre-judgment interest under N.Y. C.P.L.R., "[s]tatutory damages under the Communication Act are analogous to punitive damages in that they are designed to deter others from similar infringing activity." *Olivares*, 2004 WL 744226, at *5. Based on this reasoning and the current status of the law on this issue, I respectfully recommend that pre-judgment interest not be awarded to Plaintiff.

### 4. Costs

Lastly, the Plaintiff argues that under § 605, it is entitled to an award of $470 in costs and disbursements. *See* Hooten Supp. Aff. ¶¶ 33–34. Section 605 expressly provides that if a violation has occurred, the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *See* 47 U.S.C. § 605(e)(3)(B)(iii). Based on this language, courts in this Circuit have held that under § 605, the award of costs and attorneys' fees are mandatory. *See Autar*, 426 F.Supp.2d at 65.[3] Specifically, Plaintiff seeks $350 for the filing fee and $120 for process server fees. *See* Hooten Aff. at 3 (Statement of Damages).

---

**2.** The *court in Googies Luncheonette* ultimately awarded enhanced damages which were four and eight times the statutory damages with regard to certain defendants. However, this determination, rendered over a decade ago, was based on special circumstances that reflected "the more aggravated nature of the offense" by one defendant and another defendant that had "a record of appropriating property unlawfully." *Googies Luncheonette*, 77 F.Supp.2d at 491.

**3.** However, the Plaintiff is not requesting attorneys' fees in this action. *See* Hooten Supp. Aff. ¶ 34.

■ As previously mentioned, the Plaintiff has been provided with more than one opportunity to provide the Court with supporting materials substantiating its damages. In fact, the Court specifically requested that Plaintiff provide "[t]he required documentation in support of any costs and attorney's fees claimed." *See* DE 9 at 2. Despite these opportunities, the Plaintiff has not submitted *any documentation* to substantiate any costs incurred. Notwithstanding the lack of supporting materials, one court has suggested that costs associated with process servers can be awarded without such documentation. *See 291 Bar & Lounge,* 648 F.Supp.2d at 476 ("Although evidence was submitted to substantiate the costs for service of process, affidavits of service were filed reflecting service on both the individual and corporate defendant by a licensed process server, and the reimbursement requested is well within the norm."). However, the majority of courts in this Circuit require documentary proof of costs incurred and this Court finds such reasoning persuasive. *See Welch,* 2010 WL 4683744, at *6 (granting plaintiff's request for costs as "plaintiff has submitted documentary evidence to support its request for $735 in costs"); *El Norteno Restaurant,* 2007 WL 2891016, at *6 (finding that "[t]he filing fee and service costs are supported by documentary evidence and they are reasonable"). However, with regard to the filing fee, the Court can ascertain that Plaintiff paid the fee to file its Complaint since it received receipt # 2164 for its filing. *See* DE 1. As the filing fee for civil cases filed after April 9, 2006 is $350,[4] the Court respectfully recommends that Plaintiff be awarded $350 in costs. If the Plaintiff can present documentary proof of its cost for the process server within ten (10) days of this Order, then I would recommend that this award for costs be increased to $470.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Hurley that damages be awarded against Defendant Pizzeria Y in the amount of $20,350.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker,* 118 F.3d 900, 901 (2d Cir.), *cert. denied,* 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first class mail and to file proof of service on ECF.

**SO ORDERED.**

---

4. Pursuant to the Deficit Reduction Act of 2005 (Pub. L. 109–171), the filing fee for civil cases filed after April 9, 2006, increased from $250 to $350.