**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

J&J SPORTS PRODUCTIONS, INC.,

     Plaintiff - Appellee,

v.

MAXINE BRADY, a/k/a Elizabeth M.
Brady, d/b/a Cantina the Amazons,

     Defendant - Appellant.

No. 16-6097
(D.C. No. 5:15-CV-00454-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

In this anti-piracy case brought under the Cable Television Consumer Protection

and Competition Act, 47 U.S.C. § 553, and the Federal Communications Act, 47 U.S.C.

§ 605, Maxine Brady appeals from district court orders that granted J&J Sports

Productions, Inc.'s motion for summary judgment and denied her motion for summary

judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

J&J Sports is "a commercial distributor of sporting events." Aplt. App., Vol. I at 12. It held "the exclusive nationwide television distribution rights to [the May 4, 2013] Floyd Mayweather v. Robert Guerrero, WBC Welterweight Championship Fight Program." *Id.* at 11 (italics omitted). "The event originated via satellite uplink and, subsequently was transmitted to cable systems and satellite companies." *Id.*, Vol. II at 406-07.

On fight night, a J&J Sports investigator went into Cantina The Amazons, a "[l]ow-point beer" bar operated by Brady inside a small building she rented in Oklahoma City. *Id.* at 228. There, the investigator counted thirty-seven patrons and "observed the 11th round of the [fight]." *Id.*, Vol. I at 62.

Nearly two years later, J&J Sports sued Brady, alleging that she or her employees willfully intercepted a transmission of the fight and exhibited it to bar patrons, despite not paying the licensing fee and having no "right[ ] to publicly exhibit the Program." *Id.* at 12. J&J Sports sought damages under 47 U.S.C. § 553(a) (prohibiting the unauthorized interception or receipt of "any communications service offered over a cable system") and § 605(a) (prohibiting the unauthorized interception, receipt, or publication of a "radio communication").

Both parties moved for summary judgment. In her motion, Brady submitted an affidavit and argued there was no evidence showing (1) "the means by which [she] allegedly intercepted the signal"; or (2) that she personally intercepted the fight. Aplt.

2

App., Vol. I at 80-81. Nevertheless, an exhibit to her motion included photos of a DISH Network satellite dish attached to an outer wall of her bar. *Id.* at 146-48.

J&J Sports' summary judgment motion included (1) an affidavit from its investigator; (2) a discovery admission from Brady stating that the bar's "bartenders, and/or the manager, act[ed] as [her] agents," *id.*, Vol. II at 240-41; and (3) an affidavit from J&J Sports' president discussing possible means of pirating cable and satellite signals. J&J Sports asserted that its evidence was sufficient to establish Brady's liability under "both statutes," *id.* at 182, but that it was seeking damages under only § 605 for satellite-signal piracy.

The district court found no issue of fact as to whether the fight had been exhibited. Consequently, it denied Brady's motion. But it deferred ruling on J&J Sports' motion until Brady notified the court whether a satellite dish was in fact attached to the bar.[1]

Brady responded, conceding the existence of the satellite dish, but insisting that she "did not personally intercept a satellite signal." *Id.* at 429. Also, she submitted a letter from DISH Network stating it could not "identify an account" associated with the bar's address. *Id.* at 424.

The district court granted summary judgment to J&J Sports, pointing to the uncontroverted evidence that the fight was shown in the bar and that a satellite dish was on the building. As for the amount of damages, the district court awarded J&J Sports the statutory minimum amount of $1,000, *see* 47 U.S.C. § 605(e)(3)(C)(i)(II).

---

[1] The district court found that the photos showing the satellite dish were inadmissible because they had not been authenticated.

3

Brady now appeals.

## DISCUSSION

## I.  Standards of Review

We review summary judgment decisions de novo.  *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When considering cross-motions for summary judgment, we view each motion separately, in the light most favorable to the non-moving party, and we draw all reasonable inferences in favor of that party.  *See Pirkheim*, 229 F.3d at 1010.

## II.  Signal Piracy

J&J Sports pleaded violations of 47 U.S.C. § 553 and § 605.  Section 553 covers the piracy of communications "offered over a cable system."  47 U.S.C. § 553(a).  Because there is no evidence in this case of piracy of a cable transmission, we focus solely on § 605, which provides in relevant part that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."  *Id.* § 605(a).  This provision covers communications transmitted by satellite.  *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).[2]

---

[2] There is a split of authority as to whether § 605 covers both cable and satellite piracy.  The majority view is that § 553 and § 605 are mutually exclusive, with the latter applying only to the piracy of satellite signals.  *See, e.g.*, *J&J Sports*

(continued)

4

Section 605 imposes strict liability. *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753 (S.D. Tex. 2014); *see also* 47 U.S.C. § 605(e)(3)(C) (providing for liability without a finding of intent). To establish liability, a plaintiff must show: (1) interception of a satellite transmission; (2) lack of authorization; and (3) publication to any person. *See* 47 U.S.C. § 605; *Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985). Because "[s]ignal piracy is by its nature a surreptitious venture[,] . . . direct evidence of actual interception may understandably be hard to come by." *Webb*, 545 F.3d at 844. Thus, "[c]ircumstantial evidence can support a finding that a communication was intercepted, even absent direct evidence." *Id.* (internal quotation marks omitted).

The following is undisputed: the fight was shown in Cantina The Amazons; there was no authorization for the showing; and there was a satellite dish attached to an outer wall of the bar.[3] The logical inference to be drawn from these facts is that someone at the

---

*Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352-53 (5th Cir. 2014); *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 176-78 (1st Cir. 2006); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 205-07 (3d Cir. 2001); *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996). The minority view is that § 605 reaches both cable and satellite piracy. *See, e.g.*, *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 666 (E.D. Va. 2013). We need not choose a side in this debate, as there is no evidence in this case showing piracy of a cable transmission.

[3] In the section of her appellate brief summarizing her arguments, Brady claims "the district court inappropriately transferred the burden of proof from [J&J Sports] to [her] when it directed [her] to advise the court if she disputed that Cantina the Amazons had a DISH Network satellite dish on May 4, 2013." Aplt. Br. at 9. But advancing only a summary of an argument is generally insufficient to preserve

(continued)

5

bar intercepted a satellite transmission of the fight and displayed it on one or more of the bar's five television screens for patrons to view.

Brady maintains she did not "personally intercept" the signal or "show[ ] the fight." Aplt. Br. at 12. But these facts are immaterial, as J&J Sports seeks to impose liability against "the commercial establishment doing business as Cantina The Amazons." Aplt. App., Vol. I at 10-11. It was this entity, operated by Brady, that unlawfully broadcast the fight. Because there is no legal distinction between Brady as an individual and Brady doing business as Cantina The Amazons, she is subject to liability even if she did not personally effectuate the piracy. *See Meacham v. Okla. Bank & Trust Co.*, 600 P.2d 868, 870 (Okla. Ct. App. 1979) (stating that a person "who does business under some other name . . . remains one person, personally liable for all his obligations" (internal quotation marks omitted)); *see, e.g.*, *Joe Hand Promotions, Inc. v. Albright*, No. CIV. 2:11–2260 WBS CMK, 2013 WL 2449500, at *3-4 (E.D. Cal. June 5, 2013).

Nevertheless, as Brady stresses, a few district courts have stated that § 605 liability requires more than "mere ownership of the offending entity," *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009). These courts have required a showing that the defendant "had a right and ability to supervise the violations," *J&J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)

---

that argument for appellate review. *See Zinna v. Congrove*, 755 F.3d 1177, 1182-83 (10th Cir. 2014). Moreover, Brady failed to raise this argument in the district court and she does not argue on appeal for plain-error review. Consequently, that failure "surely marks the end of the road for [her burden-of-proof] argument." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

6

(internal quotation marks omitted). But that showing appears mostly limited to cases with allegations against both a corporate defendant and an individual defendant. *See Albright*, 2013 WL 2449500, at *3; *see, e.g., 291 Bar & Lounge, LLC*, 648 F. Supp. 2d at 473; *Joe Hand Promotions, Inc. v. Blanchard*, No. 409CV100, 2010 WL 1838067, at *3 (S.D. Ga. May 3, 2010). The instant case, by contrast, involves the liability of a bar owner who is legally inseparable from the commercial establishment she runs. Thus, the concern that "it would not be appropriate to hold an individual jointly and severally liable along with the business entity" where the individual has no right to authorize the piracy, *291 Bar & Lounge, LLC*, 648 F. Supp. 2d at 473, is not present here.

In any event, there is no genuine dispute that Brady is liable under the standard she seeks. Specifically, given Brady's admission that the bar's manager and bartenders serve as her agents, she necessarily had the right and ability to supervise their piracy of the fight. *Cf. Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994, 998 (Okla. 2013) ("Under the common law doctrine of *respondeat superior* a principal or employer is generally held liable for the wilful acts of an agent or employee acting within the scope of the employment in furtherance of assigned duties.").

Brady further argues she did not profit from the fight's exhibition. But financial benefit from piracy is not required for a finding of liability or an award of statutory damages. *See* 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."); *id.* § 605(e)(3)(C)(i)(II) ("[T]he party aggrieved may recover an award of

7

statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]"); *see also J&J Sports Prods., Inc. v. Tamayo*, No. 2:14-cv-01997-KJM-CKD, 2016 WL 2855126, at *4 (E.D. Cal. May 16, 2016) (observing in the context of liability that "[w]hether defendants . . . received any profit or financial benefit from the alleged signal piracy . . . is irrelevant, if the defendants engaged in any piracy").

Nevertheless, Brady urges that we require an "an obvious and direct financial interest in the [piracy]" as a predicate to § 605 liability. *See 291 Bar & Lounge, LLC*, 648 F. Supp. 2d at 473. But that standard—like the right-and-ability-to-supervise standard mentioned above—derives from cases involving both a corporate defendant and an individual defendant. *See id.* Further, even if we were to apply that standard here, it would not aid Brady, as there is no dispute she had an obvious and direct financial interest in pirating the fight. Indeed, she admitted that Cantina The Amazons "exhibit[ed] television programming . . . believed to be of interest to the [bar's] patrons." Aplt. App., Vol. II at 241. And on fight night, she was able to secure the patronage of thirty-seven customers while exhibiting the fight at no cost to the bar. That the bar did not charge an entry fee is irrelevant, as she had an obvious and direct financial interest in beer sales to bar patrons.

Finally, Brady points out that she "did not own any DISH Network service at the bar from which to order the fight." Aplt. Br. at 14. But the lack of an active DISH Network account for Cantina The Amazons is hardly surprising in a satellite piracy case. J&J Sports' president identified several possible means of pirating a satellite signal,

8

including using illegal unencryption devices, acquiring illegal satellite authorization codes, and diverting the signal from a nearby residence. And significantly, § 605 does not require identification of the precise means used to accomplish the piracy of a satellite signal.

Because there is no genuine dispute as to Brady's liability for a § 605 violation, the district court properly granted summary judgment to J&J Sports.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge