# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
February 28, 2020

Lyle W. Cayce
Clerk

No. 19-20458
Summary Calendar

J & J SPORTS PRODUCTIONS, INCORPORATED, as Broadcast Licensee of the May 2, 2015 "The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program,

> Plaintiff - Appellee

v.

ENOLA INVESTMENTS, L.L.C., doing business as Tea'ze Daiquiri Lounge; TIFFANEY ENOLA SMALL, doing business as Tea'ze Daiquiri Lounge, also known as Tiffaney E. Small, also known as Tiffaney Small, also known as Tiffany Small,

> Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2893

Before WIENER, HAYNES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

This case is about a bar's unauthorized telecast of the most recent "Fight of the Century." That grand title suggests it should be obvious which fight we are talking about. But just as more than one trial is called the "Trial of the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20458

Century," more than one boxing match claims to be the "Fight of the Century." At least four fights enjoyed that label in the twentieth century: the 1910 match between James Jeffries and Galveston's Jack Johnson; the 1921 match between Georges Carpentier and Jack Dempsey; the 1938 match between Joe Louis and Max Schmeling amid rising tensions between the United States and Nazi Germany; and, the bout most fans of the sweet science would bestow the title on, the 1971 fight between Muhammad Ali and Joe Frazier. *See* Erik Brady, *Fight of the Century?*, USA TODAY, April 29, 2015, at 1C.

Only two decades into the new century, at least three fights have already laid claim to the title. The first "Fight of the Century" was the 2002 match between Mike Tyson and Lennox Lewis. The second was the 2007 Oscar De La Hoya-Floyd Mayweather Jr fight. The most recent "Fight of the Century" was the one this case involves: the 2015 match between Mayweather and Manny Pacquiao. *See id.*

J & J Sports owned the right to sublicense broadcasts of the Mayweather-Pacquiao fight. Without paying J & J, Enola Investments showed the fight at Tea'ze Daiquiri Lounge near Houston. So J & J filed suit in federal court against Enola and its owner, Tiffaney Small. The district court concluded that the defendants violated the Federal Communications Act and awarded J & J $6,000 in statutory damages, another $6,000 because the violation was willful, and $14,000 in attorney's fees. Defendants appeal.

In the district court, J & J asserted claims under sections 553 and 605 of the Communications Act. Section 553 prohibits persons from "intercept[ing] or receiv[ing] . . . any communications service offered over a cable system" without authorization. 47 U.S.C. § 553(a)(1). Section 605 similarly bans the unauthorized publishing of the contents of communications received or transmitted "by wire or radio," including satellite transmissions. *Id.* § 605(a); *see DIRECTV, Inc. v. Robson*, 420 F.3d 532, 537–38 (5th Cir. 2005). Both

2

No. 19-20458

sections allow aggrieved parties to recover damages and attorney's fees plus additional damages for "willful" violations done "for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(A)–(B); *see id.* § 605(e)(3)(C)(i)–(ii).

The district court held that defendants violated the "unauthorized publication" statute (section 605) and awarded damages and attorney's fees under only that section. *See id.* § 605(e). Bizarrely, defendants devote most of their appellate brief to the "unauthorized interception" statute (section 553) the district court did not rely on. They argue, for example, that the district court "rendered 'willful' meaningless in the context [of] § 553(c)(3)(B)" and improperly calculated statutory damages under section 553(c)(3)(A)(i)–(ii). We cannot review rulings that were not made, so these arguments are irrelevant.

But even if defendants were challenging the finding of willfulness the court did make under section 605, their argument would fail. A bar does not mistakenly intercept and broadcast a transmission when it needs decoding or descrambling equipment to do so. Indeed, defendants stipulated that they needed to take affirmative acts to intercept or receive the transmission and telecast the fight. And it certainly broadcast the fight for commercial advantage; the Lounge charged a cover fee the night of the fight. The district court did not err, let alone clearly do so, in concluding that defendants willfully violated the law.

Defendants do eventually get around to making a couple arguments that are directed at the district court's ruling. They briefly argue that the district court erred by imposing liability under section 605. Before determining whether to impose liability under section 553 or 605, the district court had to determine whether the Lounge broadcasted the Fight via satellite, cable, or internet. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 353 (5th Cir. 2014) (holding that section 605 does not apply to

3

No. 19-20458

"communications by wire from [a] cable system"). The district court made the following findings: (1) the Fight's transmission "originated via satellite"; (2) the defendants had "a commercial cable account through which [the Lounge] received television and internet services"; and (3) J & J's investigator "testified that the [Fight] was being shown in high definition." It then concluded that the defendants were liable under section 605 for broadcasting a satellite transmission.

That finding was "plausible in . . . light of the record read as a whole." *See Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 613 (5th Cir. 2006) (quotation omitted). There is conflicting evidence about how the Lounge broadcast the Fight. Small claimed that an employee streamed the Fight over the internet, but J & J's investigator testified that internet streaming typically results in lower quality video than the high-definition broadcast he saw at the Lounge. J & J's corporate representative also testified that the Fight was not available to commercial establishments via internet streaming. But J & J's investigator muddled the waters by stating that he did not see cable or satellite equipment at the Lounge. And now, on appeal, defendants claim that the Lounge received the Fight via cable because Enola maintained a business account with Comcast. The only undisputed evidence is that the Fight was originally transmitted via satellite.

The district court thus had several plausible options to choose from—satellite, internet, or cable. *Cf. J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802–03 (10th Cir. 2016) (noting that lack of an active satellite service account does not preclude liability under section 605, as the statute "does not require identification of the precise means used to accomplish the piracy of a satellite signal"). And when "there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996).

Defendants also challenge the $14,000 award of attorney's fees, contending that the hours J & J's counsel devoted to the case were "exaggerated or fabricated." But we see no problem with the district court's conclusion that it was reasonable for plaintiff's counsel to devote 56 hours to the case (at a rate of $250/hour).

The judgment is AFFIRMED.